No. 25-20492

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

HARRIET PAYNE; CHARLES PAYNE, JR.; CAVIN PAYNE; STEPHANIE PAYNE;
BETTY MORRISON; KIZZ GOINS; KATANIA DEARBORNE; ROBERT PAYNE,

Plaintiffs - Appellees

v.

CITY OF HOUSTON, TEXAS,

Defendant - Appellant

## On Appeal from
United States District Court for the Southern District of Texas

4:23-CV-4686

## BRIEF OF APPELLANT, CITY OF HOUSTON, TEXAS

ARTURO G. MICHEL
City Attorney

Christy L. Martin
Chief, Torts/Civil Rights
Texas Bar No. 24041336
Federal Bar No. 754168
CITY OF HOUSTON LEGAL DEPARTMENT
900 Bagby Street, 4th Floor
Houston, Texas 77002
832.393.6438 (telephone)
832.393.6259 (facsimile)
christy.martin@houstontx.gov

*Attorneys for City of Houston, Texas*

## CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the persons and entities listed below as described in the fourth sentence of Fifth Circuit Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

**Plaintiffs - Appellees**:
Harriet Payne
Charles Payne, Jr.
Cavin Payne
Stephanie Payne
Betty Morrison
Kizz Goins
Katania Dearborne
Robert Payne

**Counsel for Plaintiffs - Appellees**:
Paul A. Grinke
Aaron Dekle
Ben Crump Law, PLLC
5 Cowboys Way, Suite 300
Frisco, Texas 75034

James Sherry
Carl Evans
Stephen M. Bergen
McCathern, PLLC
3710 Rawlins St., Suite 1600
Dallas, Texas 75219

**Defendant - Appellant**:
City of Houston, Texas

**Counsel for Defendant - Appellant**:
Christy L. Martin
Melissa Azadeh
CITY OF HOUSTON LEGAL DEPARTMENT
900 Bagby Street, 4th Floor
Houston, Texas 77002

**STATEMENT REGARDING ORAL ARGUMENT**

Defendant–Appellant City of Houston, Texas ("Houston") believes that oral argument may be helpful to the Court. Although Houston sought permission to appeal the district court's denial of Houston's motion for summary judgment on Payne's *Monell* claims as part of these proceedings, that request was denied. Accordingly, the issues in this appeal are entirely questions of state law, specifically whether Houston's governmental immunity is waived under the Texas Tort Claims Act. Oral argument may aid the Court's resolution of these purely state law issues.

# TABLE OF CONTENTS

Certificate of Interested Persons .............................................................. ii

Statement Regarding Oral Argument ...................................................... iii

Table of Contents ...................................................................................... iv

Index of Authorities .................................................................................. vi

Jurisdictional Statement ............................................................................1

Statement of Issues Presented for review .................................................2

    1.    The trial court erred in denying summary judgment on Payne's TTCA claim because Cabrera breached no duty that proximately caused the collision. ...........2

    2.    The trial court erred in denying summary judgment on Payne's TTCA claim because it is barred under the TTCA's election of remedies scheme...................2

    3.    The trial court erred in denying summary judgment on Payne's TTCA claim because the 9-1-1 exception preserves Houston's immunity. .............................2

Statement of the Case.................................................................................3

Statement of Facts......................................................................................6

Summary of the Argument.........................................................................8

Argument...................................................................................................11

    I.    Standard of Review................................................................11

    II.    Seminal Authority..................................................................13

        A.    Governmental immunity from suit is jurisdictional and subject to four special rules...............................................................13

            1.    Plaintiff retains the burden of proof to establish waiver of immunity…… ...................................................................14

            2.    Waiver of immunity requires clear and unambiguous language. .......15

            3.    All doubts are resolved in favor of retaining immunity......................16

Case: 25-20492    Document: 31    Page: 5    Date Filed: 01/20/2026

4.    Courts must defer to the legislature and cannot judicially-create immunity waiver theories. ........................................................16

B.    TTCA and Election of Remedies Scheme .............................17

C.    9-1-1 exception .................................................................19

III.    The trial court erred in denying summary judgment on Payne's TTCA claim because Cabrera breached no duty that proximately caused the collision. .........20

A.    Houston's motion demonstrated that Cabrera breached no duty and Plaintiffs have no evidence otherwise. ..........................................22

B.    Houston's motion established that Charles Payne's conduct was the only proximate cause of the collision. ....................................23

C.    Payne failed to present evidence that would create a genuine issue of material fact to defeat summary judgment. ....................................27

IV.    The trial court erred in denying summary judgment on Payne's TTCA claim because it is barred under the TTCA's election of remedies scheme.................31

A.    Houston presented evidence that Charles Payne, Sr. took a judgment against Officer Cabrera, which conferred immunity upon Houston for Payne's derivative claims. .............................................................32

B.    Payne failed to present evidence or argument that would defeat summary judgment in Houston's favor on her TTCA claim..........................................32

V.    The trial court erred in denying summary judgment on Payne's TTCA claim because the 9-1-1 exception preserves Houston's immunity. .............................33

A.    Houston established that the 9-1-1 exception bars Payne's TTCA claim….......................................................................33

B.    Payne failed to negate the 9-1-1 exception............................................35

Conclusion ......................................................................................36

Certificate of Service ........................................................................37

Certificate of Compliance ..................................................................38

# INDEX OF AUTHORITIES

Cases

*Austin v. Kroger Tex., L.P.*,
    864 F.3d 326 (5th Cir. 2017) ..............................................................11

*Celotex Corp. v. Catreet*,
    477 U.S. 317 (1986) ................................................................... 11, 12

*City of Austin v. Powell*,
    704 S.W.3d 437, 459 (Tex. 2024) ................................................ 23, 33

*City of Galveston v. State*,
    217 S.W.3d 466 (Tex. 2007) ..............................................................16

*City of Galveston v. Whitman*,
    919 S.W.2d 929 (Tex. App.—Houston [14th Dist.] 1996 writ denied) .............20

*City of Houston v. Denby*,
    No. 01-21-00422-CV, 2022 WL 3588753 (Tex. App.—Houston [1st Dist.] Aug.
    23, 2022, no pet.) (mem. op.)........................................................ 19, 35

*City of Killeen-Killeen Police Dep't v. Terry*,
    712 S.W.3d 101, 102 (Tex. 2025) ................................................. 20, 34

*City of San Antonio v. Maspero*,
    640 S.W.3d 523 (Tex. 2022) ..............................................................15

*City of San Antonio v. Riojas*,
    640 S.W.3d 534 (Tex. 2022) ....................................................... 15, 20

*County of Zapata v. Lopez*,
    61 S.W.3d 581 (Tex. App.—San Antonio 2001, no pet.) ...................................20

*Del Lago Partners v. Smith*,
    307 S.W.3d 762, 774 (Tex. 2010)........................................................21

*Doe v. Boys Clubs*,
    907 S.W.3d 472, 478 (Tex. 1995)........................................................21

*Duhart v. State*,
    610 S.W.2d 740 (Tex. 1980)..............................................................15

*Fed. Sign v. Tex. S. Univ.*,
  951 S.W.2d 401 (Tex. 1997)..............................................................14

*Fort Worth Transp. Auth. v. Rodriguez*,
  547 S.W.3d 830 (Tex. 2018)............................................................16

*Foster v. Denton Indep. Sch. Dist.*,
  73 S.W.3d 454, 465 (Tex. App.—Fort Worth 2002, no pet.)............................25

*Franka v. Velasquez*,
  332 S.W.3d 367, 371 n.9 (Tex. 2011)................................................18

*Gonzales v. Trinity Indus., Inc.*,
  7 S.W.3d 303, 307 (Tex. App.—Houston [1st Dist.] 1999, pet. denied)...........21

*Guillen v. City of San Antonio*,
  13 S.W.3d 428 (Tex. App.—San Antonio 2000, pet. denied)............................20

*Infant v. Law Office of Joseph Onwuteaka, P.C.*,
  735 F. App'x 839 (5th Cir. 2018) ......................................................12

*Jarrett v. Shook*,
  No. 03-12-00038-CV, 2012 WL 4466473 (Tex. App.—Austin Sept. 27, 2012,
  no pet.)..........................................................................25

*Lawson v. B Four Corp.*,
  888 S.W.2d 31, 35 (Tex. App.—Houston [1st Dist.] 1994, writ denied)...........21

*Magnolia Petroleum Co. v. Walker*,
  125 Tex. 430, 83 S.W.2d 929 (1935)................................................15

*McFaul v. Valenzuela*,
  684 F.3d 564, 571 (5th Cir.2012) ......................................................12

*Mission Consol. Indep. Sch. Dist. v. Garcia*,
  253 S.W.3d 653 (Tex. 2008)...................................................... 17, 18

*Newman v. Obersteller*,
  960 S.W.2d 621, 622–23 (Tex. 1997)................................................18

*Patterson v. United States*,
  No. 3:23-CV-3-DPJ-ASH, 2025 WL 2552297 (S.D. Miss. Aug. 15, 2025).......30

*Payne v. City of Houston, Tex.*,
  No. 24-20150, 2025 WL 999085 (5th Cir. Apr. 3, 2025) (unpublished) ............4

*Peek v. Oshman's Sporting Goods, Inc.*,
  768 S.W.2d 841, 846 (Tex. App.—San Antonio 1989, writ denied) ................21

*Rattray v. City of Brownsville*,
  662 S.W.3d 860 (Tex. 2023)........................................................... 14, 15, 16, 17

*Rhodes v. City of Arlington*,
  215 F. App'x 329 (5th Cir. 2007) ...................................................................1

*Rivas v. State*,
  787 S.W.2d 113, 115–16 (Tex. App.—Dallas 1990, no pet.) ...........................33

*Russell v. Ingersoll-Rand Co.*,
  841 S.W.2d 343, 345 (Tex. 1992)....................................................................32

*Salinas v. Briggs Ranches*,
  350 S.W.3d 218, 227 (Tex. App.—San Antonio 2011, no pet.) ........................25

*Sampson v. Univ. of Tex. at Austin*,
  500 S.W.3d 380 (Tex. 2016)...........................................................................13

*Sharyland Water Supply Corp. v. City of Alton*,
  354 S.W.3d 407 (Tex. 2011)...........................................................................17

*Smith v. Cent. Freight Lines, Inc.*,
  774 S.W.2d 411, 412 (Tex. App.—Houston [14th Dist.] 1989, writ denied) .....23

*Stanfield v. Neubaum*,
  494 S.W.3d 90, 97 (Tex. 2016).......................................................................21

*State v. Lueck*,
  290 S.W.3d 876 (Tex. 2009)...........................................................................13

*State v. Oakley*,
  227 S.W.3d 58 (Tex. 2007)............................................................................14

*Strong v. Paradise*,
  No. 3:23-CV-2847-K, 2025 WL 3532150 (N.D. Tex. Nov. 18, 2025)...............30

*Tex. Dep't of Parks & Wildlife v. Miranda*,
133 S.W.3d 217 (Tex. 2004)................................................... 11, 1214

*Tex. Dep't of Transp. v. Jones*,
8 S.W.3d 636 (Tex. 1999)...................................................14

*Tex. Nat. Res. Conservation Comm'n v. IT-Davy*,
74 S.W.3d 849 (Tex. 2002)...................................................17

*Tooke v. City of Mexia*,
197 S.W.3d 325 (Tex. 2006)...................................... 11, 13

*Town of Prosper v. Harper*,
No. 05-24-01029-CV, 2025 WL 1909496 (Tex. App.—Dallas July 8, 2025, no
pet.)................................................................................31

*Town of Shady Shores v. Swanson*,
590 S.W.3d 544 (Tex. 2019)...................................... 11, 14

*Unimex Logistics, LLC v. Guerra*,
No. 13-23-00348-CV, 2025 WL 1912194 (Tex. App.—Corpus Christi–Edinburg
July 10, 2025, no pet.)...............................................30

*United States ex rel Johnson v. Raytheon Co.*,
93 F.4th 776, 782 (5th Cir. 2024) ...................................12

*United States v. Vickers*,
540 F.3d 356, 365 (5th Cir. 2008) ...................................33

*Univ. of Tex. Health Sci. Ctr. at Houston v. Rios*,
542 S.W.3d 530, 536 (Tex. 2017)...................................17

*Univ. of Tex. Med. Branch at Galveston v. York*,
871 S.W.2d 175 (Tex. 1994)...................................15

*Univ. of the Incarnate Word v. Redus*,
602 S.W.3d 398 (Tex. 2020)...................................13

*Vann v. City of Southaven*,
884 F.3d 307 (5th Cir. 2018) ...................................11

*Wease v. Ocwen Loan Servicing, LLC*,
915 F.3d 987 (5th Cir. 2019) ...................................12

*Werner Enterprises, Inc. v. Blake*, 719 S.W.3d 525, 2024 WL 6043877 (Tex. June 27, 2025) ...................................................................................... passim

*Western Invs. v. Urena*,
162 S.W.3d 547, 551 (Tex. 2005)........................................................21

*Wichita Falls State Hosp. v. Taylor*,
106 S.W.3d 692 (Tex. 2003).................................................. 13, 15, 16

*Williams v. BP Expl. & Prod., Inc.*,
143 F.4th 593, 597 (5th Cir. 2025) ............................................ 13, 30

*Williams v. BP Expl. & Prod., Inc.*,
143 F.4th 593, 602 (5th Cir. 2025) ......................................................12

Statutes

Tex. Civ. Prac. & Rem. Code § 51.014(a)(8) ...........................................1

Tex. Civ. Prac. & Rem. Code § 101.021 .................................................14

Tex. Civ. Prac. & Rem. Code § 101.062 ............................. 19, 20, 33, 34

Tex. Civ. Prac. & Rem. Code § 101.106(a) .............................................18

Tex. Civ. Prac. & Rem. Code § 101.106(d)................................. 19, 31, 32

Tex. Gen. Laws 847, 886 ........................................................................18

Tex. Gov't Code § 311.034......................................................... 11, 13, 16

Tex. Gov't. Code Ann. § 311.011(a)........................................................33

TEX. REV. CIV. STAT. art. 6252-19, § 12(a)......................................17

Tex. Transp. Code § 545.132..................................................................24

Tex. Transp. Code § 545.365..................................................................35

## JURISDICTIONAL STATEMENT

In this appeal, Defendant City of Houston seeks review of the trial court's October 28, 2025 order denying its Rule 56 Motion for Summary Judgment Plaintiffs' claims brought pursuant to the Texas Tort Claims Act, based on governmental immunity. Texas law expressly permits interlocutory appeal of an order denying a plea to the jurisdiction by a governmental unit.  Tex. Civ. Prac. & Rem. Code § 51.014(a)(8).  Additionally, because the interlocutory order denies Houston governmental immunity from suit under state law, it is treated as final for purposes of appellate jurisdiction under the collateral order doctrine. *Rhodes v. City of Arlington*, 215 F. App'x 329 (5th Cir. 2007).

## STATEMENT OF ISSUES PRESENTED FOR REVIEW

1. The trial court erred in denying summary judgment on Payne's TTCA claim because Cabrera breached no duty that proximately caused the collision.

2. The trial court erred in denying summary judgment on Payne's TTCA claim because it is barred under the TTCA's election of remedies scheme.

3. The trial court erred in denying summary judgment on Payne's TTCA claim because the 9-1-1 exception preserves Houston's immunity.

## STATEMENT OF THE CASE

This is the second lawsuit brought by the family of Charles Payne, Sr. (collectively "Payne") arising from a December 26, 2021, collision between Charles Payne, Sr. and Houston Police Department Officer Christopher Cabrera ("Officer Cabrera"). Payne initially filed suit in Harris County District Court against the City of Houston pursuant to the Texas Tort Claims Act ("TTCA"). *See* ROA.142.

On July 19, 2023, Cabrera filed his own lawsuit against the Estate of Charles Payne, Sr.   ROA.929.   The Estate of Charles Payne answered, through attorneys of record Paul Grinke, Aaron Deckle, and Ben Crump. ROA.937.   Rather than filing his compulsory counterclaim against Cabrera or moving to consolidate Cabrera's lawsuit into the suit that Plaintiffs originally brought against Houston, Plaintiffs allowed the matters to proceed separately.

On December 15, 2023, Houston moved for summary judgment on all of Payne's causes of action.   ROA.142-306.   Houston argued that Charles Payne proximately caused the accident because—while in the midst of a heart attack and diabetic emergency and while under the influence of marijuana—he made an illegal left turn without yielding to oncoming traffic, including Officer Cabrera's police vehicle.   ROA.150.   If Charles Payne had stopped and yielded just two seconds, the accident would not have occurred.   ROA.150. Houston also asserted both traditional

and no-evidence points as to the applicability of the TTCA's emergency and 9-1-1 exceptions.  ROA.158-59.

The same day Houston filed its motion, Payne non-suited all her claims in state court[1] and re-filed her complaint in the federal district court.  ROA.20.  In addition to her TTCA claims against Houston, Payne asserted § 1983 claims against Houston, as well as against Officer Cabrera individually.  ROA.38-44.

On March 19, 2024, the district court granted Officer Cabrera's motion to dismiss the claims against him based on qualified immunity, ROA.474, but denied Houston's motion as to both the federal and state claims.  ROA.474.

On April 8, 2024, Houston filed its notice of interlocutory appeal based on the denial of Houston's motion as to the TTCA claims.  ROA.484.  A panel of this Court affirmed.  *Payne v. City of Houston, Tex.*, No. 24-20150, 2025 WL 999085, at *1 (5th Cir. Apr. 3, 2025) (unpublished).

On September 30, 2024, final judgment dismissing Officer Cabrera's suit was entered, after the estate settled Officer Cabrera's claim for $24,000.00.  ROA.950, 953, 1087, 1393.

---

[1] *Available at:*
https://www.hcdistrictclerk.com/Edocs/Public/ViewFilePage.aspx?Get=CU1sar6drIHpouiLpb1mP3mgwdGQO+vB2DwB+7SGgdkuk9Ph1NBAqJeJy5BLwPhIdOZk69m08F0GEprCVd31bNZ14+TcTk1K7IBFxAabQdPZixhssP+NGSAl5EGwQGP0zTD3G9FxkXM=v

On September 6, 2025, Houston moved for summary judgment on all claims. ROA.1092. The trial court denied the motion without analysis. ROA.2743. Houston filed a notice of interlocutory appeal related to Payne's TTCA claims. ROA.2747.

## STATEMENT OF FACTS

Officer Cabrera is an HPD patrol officer. ROA.1119. He drove northbound on North Shepherd in a manner that he believed was reasonable and prudent. ROA1119. He was obeying traffic signals and came to a complete stop at several red lights on North Shepherd. ROA.1119. He was not accelerating aggressively. ROA.1137-38, 1672-73. But he reached a peak speed of 70 mph for a few seconds. ROA.1134

Suddenly, a Cadillac sedan pulled out in front of him. ROA.1120. At that point on North Shepherd, there is not a stop sign, stop light, or yield sign that controlled Officer Cabrera's northbound lanes of travel. ROA.1120.



Payne was making a left turn, ROA.1120, and had the duty to yield to traffic heading northbound on Shepherd; he did not do so. ROA.1644-45.

Payne was impaired and in the throes of a medical emergency. Payne was having a heart attack as evidenced by the EMS EKG on-scene and further

evidenced by the extremely narrowed left anterior descending coronary artery (aka the "widowmaker") noted in the medical examiner's autopsy. ROA.1122.[2] In addition, Payne's blood sugar (glucose) was extremely elevated. ROA.1122. Though the normal range is 70-100 mg/dL, Payne's blood glucose at the time of the accident was over 500 mg/dL. ROA.1122. Blood glucose levels this high would have almost certainly affected his vision, could have affected his judgment, and was a significant metabolic stressor that likely contributed to the acute heart attack he was having at the time of the subject auto accident. ROA.1122. Indeed, uncontrolled blood sugar from diabetes can cause a person to fail a field sobriety test, causing them to appear intoxicated. ROA.1650. He was also under the influence of marijuana, which can impair a person's ability to operate a motor vehicle, including judgment, ability to gauge speed and distance, and likelihood of distraction. ROA.1647-49. Separately or combined with the impairing effects of THC, Payne's time perception, judgment, and coordination were impaired enough to turn left without looking or yielding to oncoming traffic. ROA.1122.

---

[2] The trial court denied Payne's motion to strike Dr. Totz's testimony.  ROA.2743.

## SUMMARY OF THE ARGUMENT

All of the issues in this appeal pertain to Houston's governmental immunity, which implicates subject-matter jurisdiction. Houston is presumptively immune from suit in its governmental functions, which includes police functions. The TTCA waives governmental immunity for certain categories of cases, including motor vehicle collisions. But for a court to find governmental immunity is waived—and therefore that the trial court has subject-matter jurisdiction—a plaintiff not only must plead and present evidence bringing their case within the motor vehicle waiver, but also must negate any exceptions and exclusions that would vitiate the waiver. The summary judgment record here establishes that Payne has not met that burden.

First, to bring her case within the motor vehicle waiver, Payne had to present evidence that Charles Payne's death arose from motor-vehicle use *and* that his death was proximately caused by the employee's negligence. This summary judgment record establishes that Charles Payne proximately caused this accident by making an illegal left turn into oncoming traffic. Under recent Texas Supreme Court precedent, the only person to whom any proximate causation could be attributed is Charles Payne. Plaintiffs failed to present any cogent argument as to how their TTCA claims could survive this recent authority. Without proximate cause, Plaintiffs cannot establish that their case falls within the TTCA's motor vehicle waiver.

Additionally, the trial court erred in entering judgment in Houston's favor based on the TTCA's election of remedies scheme. The TTCA's election of remedies scheme confers an additional layer of immunity from suit and/or liability to a governmental unit or its employee when certain events occur. Specifically, section 101.1016(d) states that if a judgment is taken against an employee of a government entity, then judgment against the governmental unit is immediately and forever barred. Here, the evidence established that judgment was entered against Officer Cabrera individually in the suit he filed against Charles Payne's estate. Since Payne's wrongful death claims are wholly derivative of Charles Payne's, Houston was entitled to judgment as a matter of law.

Finally, Payne's suit is barred by the TTCA's 9-1-1 exception. The 9-1-1 exception vitiates any waiver of governmental immunity for incidents involving response to a 9-1-1 call. Such was the case here. The only way for Payne to avoid the 9-1-1 exception was to present evidence establishing that Officer Cabrera committed a violation of applicable law; Payne did not do so. Payne merely argued that Officer Cabrera exceeded posted speed limits. But Texas law exempts patrol officers from complying with posted speed limits. As Payne failed to overcome the TTCA's 9-1-1 exception, the trial court erred in denying summary judgment in Houston's favor.

This Court should reverse and render judgment in Houston's favor dismissing Payne's TTCA claims with prejudice for lack of subject-matter jurisdiction.

## ARGUMENT

Houston enjoys governmental immunity from suit and liability in the performance of its governmental functions unless that immunity has been waived by the Legislature in clear and unambiguous language. *See, e.g.*, *Tooke v. City of Mexia*, 197 S.W.3d 325, 343-44 (Tex. 2006); Tex. Gov't Code § 311.034. Governmental immunity deprives a trial court of subject-matter jurisdiction for suits against governmental units unless the government consents to suit. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 224 (Tex. 2004). The plaintiff always retains the burden to affirmatively demonstrate the trial court's jurisdiction. *Town of Shady Shores v. Swanson*, 590 S.W.3d 544, 551 (Tex. 2019).

## I.     Standard of Review

Summary judgment is proper under Rule 56, Federal Rules of Civil Procedure, if the movant establishes that there is no genuine issue of material fact and the law entitles the movant to a judgment as a matter of law. *See* Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catreet*, 477 U.S. 317, 322 (1986); *Vann v. City of Southaven*, 884 F.3d 307, 309 (5th Cir. 2018). While the movant must demonstrate the absence of a genuine issue of material fact, the movant does not need to negate the elements of the non-movant's case. *Austin v. Kroger Tex., L.P.*, 864 F.3d 326, 335 (5th Cir. 2017) (citation omitted). Rule 56(c) also mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a

11

party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Celotex*, 477 U.S. at 322.

To avoid summary judgment, the non-movant must identify specific evidence in the record and articulate how that evidence supports the specific claim. *See Infant v. Law Office of Joseph Onwuteaka, P.C.*, 735 F. App'x 839, 843 (5th Cir. 2018) (citation omitted). Factual controversies are to be resolved in favor of the non-movant, but only when both parties have submitted evidence of contradictory facts. *Wease v. Ocwen Loan Servicing, LLC*, 915 F.3d 987, 992 (5th Cir. 2019). Summary judgment may not be thwarted by conclusory allegations, unsupported assertions, or presentation of only a scintilla of evidence. *McFaul v. Valenzuela*, 684 F.3d 564, 571 (5th Cir.2012); *see also Williams v. BP Expl. & Prod., Inc*., 143 F.4th 593, 602 (5th Cir. 2025) ("Unsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment.").

For both a challenge to a trial court's subject-matter jurisdiction and motion for summary judgment, appellate courts review the trial court's ruling de novo. *Miranda*, 133 S.W.3d at 228; *United States ex rel Johnson v. Raytheon Co*., 93 F.4th 776, 782 (5th Cir. 2024). Appellate courts review decisions regarding the

admissibility of expert opinion for abuse of discretion. *Williams v. BP Expl. &*
*Prod., Inc*., 143 F.4th 593, 597 (5th Cir. 2025)

## II.    Seminal Authority

This appeal presents purely state-law issues regarding statutory
construction of the TTCA.  Accordingly, Houston presents this discussion of seminal
authority to hopefully aid the Court's resolution.

### A.    Governmental immunity from suit is jurisdictional and subject to four special rules.

Predicated upon the ancient proposition that the king can do no wrong
but maintained to preserve executive and legislative power from judicial
encroachment and protect the public treasury, sovereign immunity bars suit against
the State of Texas unless the Texas Legislature has waived immunity in clear and
unambiguous language. *Univ. of the Incarnate Word v. Redus*, 602 S.W.3d 398, 404
(Tex. 2020); Tex. Gov't Code § 311.034.  Its corollary, Governmental immunity,
protects political subdivisions of the State, including counties, cities, and school
districts. *Wichita Falls State Hosp. v. Taylor*, 106 S.W.3d 692, 694 n.3 (Tex. 2003).

Governmental immunity has two components: immunity from liability,
which bars enforcement of a judgment against a governmental entity, and immunity
from suit, which bars suit against the entity altogether. *Tooke v. City of Mexia*, 197
S.W.3d 325, 332 (Tex. 2006); *see also Sampson v. Univ. of Tex. at Austin*, 500
S.W.3d 380, 384 (Tex. 2016); *State v. Lueck*, 290 S.W.3d 876, 880 (Tex. 2009).

Immunity from liability is an affirmative defense, but immunity from suit deprives a court of subject matter jurisdiction. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 224 (Tex. 2004).

Because governmental immunity from suit is implicated here, four overlapping "special rules" circumscribe this Court's analysis. *See State v. Oakley*, 227 S.W.3d 58, 62 (Tex. 2007).

### 1.    Plaintiff retains the burden of proof to establish waiver of immunity.

The plaintiff maintains the burden to affirmatively demonstrate the trial court's jurisdiction, which includes establishing a waiver of immunity in suits against the government. *Rattray v. City of Brownsville*, 662 S.W.3d 860, 865 (Tex. 2023); *Town of Shady Shores v. Swanson*, 590 S.W.3d 544, 550 (Tex. 2019); *Tex. Dep't of Transp. v. Jones*, 8 S.W.3d 636, 638 (Tex. 1999); *Miranda*, 133 S.W.3d at 226. The plaintiff can do so only by demonstrating that the legislature, as the branch of government constitutionally empowered to manage the State's financial affairs, has waived immunity by statute. *Rattray*, 662 S.W.3d at 865 (citing *Fed. Sign v. Tex. S. Univ.*, 951 S.W.2d 401, 405 (Tex. 1997)).

A plaintiff must begin, therefore, by alleging circumstances that fit within a provision of the Act that authorizes a waiver. *Id.* This means the plaintiff must establish all essential elements under 101.021's waiver provisions. *See* Tex. Civ. Prac. & Rem. Code § 101.021.

14

But a plaintiff cannot stop there. *Rattray*, 662 S.W.3d at 866. The Act also provides various exceptions or caveats that function as a withdrawal of the waiver, and thus of the court's jurisdiction to proceed, under certain conditions. *Id.* The plaintiff must also negate the TTCA's exceptions and exclusions. *Id.*; *City of San Antonio v. Maspero*, 640 S.W.3d 523, 529 (Tex. 2022); *City of San Antonio v. Riojas*, 640 S.W.3d 534, 537 (Tex. 2022). Indeed, being "within" the waiver entails both satisfying the provisions that clearly and affirmatively waive immunity and negating any provisions that create exceptions to, and thus withdraw, that waiver. *Rattray*, 662 S.W.3d at 867.

### 2.  Waiver of immunity requires clear and unambiguous language.

The Supreme Court has long required that immunity be waived in clear and unambiguous language. *Univ. of Tex. Med. Branch at Galveston v. York*, 871 S.W.2d 175, 177 (Tex. 1994); *Duhart v. State*, 610 S.W.2d 740, 742 (Tex. 1980). Indeed, as early as 1935, the Supreme Court held: "[W]hatever is not unequivocally granted in clear and explicit terms is withheld. Any ambiguity or obscurity in the terms of the statute must operate in favor of the state." *Magnolia Petroleum Co. v. Walker*, 125 Tex. 430, 441, 83 S.W.2d 929, 934 (1935).

In 2001, the Legislature ratified this approach by adding section 311.034 to the Code Construction Act. *See Wichita Falls State Hosp.*, 106 S.W.3d at 696. That section provides: "In order to preserve the legislature's interest in

managing state fiscal matters through the appropriations process, a statute shall not be construed as a waiver of sovereign immunity unless the waiver is effected by clear and unambiguous language." Tex. Gov't Code § 311.034.

### 3. All doubts are resolved in favor of retaining immunity.

There is a heavy presumption in favor of immunity. *City of Galveston v. State*, 217 S.W.3d 466, 469 (Tex. 2007). As such, a court must resolve all ambiguities in statutes by retaining immunity. *Wichita Falls State Hosp.*, 106 S.W.3d at 697. And in analyzing each case, the Court's starting point is always the status quo: a presumption against any waiver until the plaintiff establishes otherwise. *Rattray*, 662 S.W.3d at 866.

### 4. Courts must defer to the legislature and cannot judicially-create immunity waiver theories.

Policy justifications for immunity—and by extension, for limitations on waivers of immunity—revolve around protecting the public treasury. *Fort Worth Transp. Auth. v. Rodriguez*, 547 S.W.3d 830, 839 (Tex. 2018). The doctrine protects the State and its political subdivisions from lawsuits for money damages and other forms of relief, and leaves to the Legislature the determination of when to allow tax resources to be shifted away from their intended purposes toward defending lawsuits and paying judgments. *Id.* Only the legislature—as the branch of government constitutionally empowered to manage the State's financial affairs—can waive immunity. *See Rattray*, 662 S.W.3d at 867. Even if a governmental unit would be

16

happy to waive "its" immunity, it is not the governmental unit's immunity to waive.
*Id.*

As a result, the Supreme Court defers to the Legislature to define the
contours of any waiver of immunity. *DeWitt*, 904 S.W.2d at 652 ("First, waiver of
sovereign immunity is a matter addressed to the Legislature."). As a corollary to
this deference, the Supreme Court has long-since rejected judicially-created waivers
of governmental immunity. *Sharyland Water Supply Corp. v. City of Alton*, 354
S.W.3d 407, 414 (Tex. 2011); *Tex. Nat. Res. Conservation Comm'n v. IT-Davy*, 74
S.W.3d 849, 856-57 (Tex. 2002).

### B.     TTCA and Election of Remedies Scheme

The Texas Tort Claims Act governs all tort claims asserted against a
governmental entity. *Mission Consol. Indep. Sch. Dist. v. Garcia*, 253 S.W.3d 653,
655 & 657 (Tex. 2008). As first passed in 1969, the Act did little to limit claims
against public employees, providing only that such claims were barred by a
judgment in an action or settlement of a claim against the governmental employer.
*Univ. of Tex. Health Sci. Ctr. at Houston v. Rios*, 542 S.W.3d 530, 536 (Tex. 2017)
(citing Act of May 22, 1969, 61st Leg., R.S., ch. 292, § 12(a), 1969 Tex. Gen. Laws
874, 877 (codified at TEX. REV. CIV. STAT. art. 6252-19, § 12(a), recodified as §
101.106 by Act of May 17, 1985, 69th Leg., R.S., ch. 959, § 1, 1985 Tex. Gen. Laws
3242, 3305)). The provision effectively conferred immunity on employees who

otherwise had only qualified immunity. *Id.* (citing *Newman v. Obersteller*, 960 S.W.2d 621, 622–23 (Tex. 1997) (the original version of § 101.106(e) conferred immunity on governmental officials when a case against a governmental unit arising out of the same facts had proceeded to judgment)).

Still, "plaintiffs often sought to avoid the Act's damages cap or other strictures by suing governmental employees, since claims against them were not always subject to the Act." *Id.* (quoting *Garcia*, 253 S.W.3d at 656). "To prevent such circumvention, and to protect governmental employees," the Legislature enacted a comprehensive election-of-remedies provision in 2003. *See Garcia*, 253 S.W.3d at 657; Act of June 2, 2003, 78th Leg., R.S., ch. 204, § 11.05, 2003 Tex. Gen. Laws 847, 886 (current version of § 101.106). The scheme confers immunity upon either the governmental employer or the employee depending on the occurrence of certain conditions. *Franka v. Velasquez*, 332 S.W.3d 367, 371 n.9 (Tex. 2011) ("[W]e think the character of the statute as one conferring immunity remains unchanged."). For example, when a plaintiff elects to file suit against a governmental employer, the scheme confers immunity from suit on a governmental employee and irrevocably bars suit against the employee. *See* Tex. Civ. Prac. & Rem. Code § 101.106(a). Relevant here, section 101.016(d) states:

> A judgment against an employee of a governmental unit shall immediately and forever bar the party obtaining the judgment from any suit against or recovery from the governmental unit.

Tex. Civ. Prac. & Rem. Code § 101.106(d).  The Texas Supreme Court has seemingly never had the occasion to construe this provision.

### C.    9-1-1 exception

The 9-1-1 exception is set forth in section 101.062 of the Texas Civil Practice and Remedies Code:

> This chapter applies to a claim against a public agency that arises from an action of an employee of the public agency or a volunteer under the direction of the public agency and that involves providing 9-1-1 service or responding to a 9-1-1 emergency call only if the action violates a statute or ordinance applicable to the action.

Tex. Civ. Prac. & Rem. Code § 101.062(b).

Although the TTCA does not define "9-1-1 emergency call," the statute defines "9-1-1 emergency service" consistent with the Health and Safety Code, which defines "9-1-1 service" as "communications service that connects users to a public safety answering point through a 9-1-1 system." *City of Houston v. Denby*, No. 01-21-00422-CV, 2022 WL 3588753, at *5 (Tex. App.—Houston [1st Dist.] Aug. 23, 2022, no pet.) (mem. op.).  Considering the language of the statute, a 9-1-1 call is a call placed to a 9-1-1 service. *Id.* at *3.  Nothing in this statute requires that the employee or volunteer be acting under the pressure of an emergency response. *Id.*

To avoid the 9-1-1 exception, a plaintiff must plead and prove that their claim: 1) "arises from" an action of an employee; and 2) the action of the employee

volunteer violates a statute or ordinance applicable to the action of the employee. *See id.* at *7. Unlike the TTCA's emergency exception, the 9-1-1 exception contains no recklessness prong. *City of Killeen-Killeen Police Dep't v. Terry*, 712 S.W.3d 101, 102 (Tex. 2025). Hence, absent a violation of a statute or ordinance, the plaintiff's claims are excepted from the TTCA's limited waiver of immunity. *Id.*; Tex. Civ. Prac. & Rem. Code § 101.062(b); *County of Zapata v. Lopez*, 61 S.W.3d 581, 584 (Tex. App.—San Antonio 2001, no pet.); *Guillen v. City of San Antonio*, 13 S.W.3d 428, 432 (Tex. App.—San Antonio 2000, pet. denied); *City of Galveston v. Whitman*, 919 S.W.2d 929, 931-32 (Tex. App.—Houston [14th Dist.] 1996 writ denied). In other words, the 9-1-1 exception reinstates the governmental unit's immunity, unless the plaintiff pleads facts and presents evidence to show violation of a statute or ordinance.

### III. The trial court erred in denying summary judgment on Payne's TTCA claim because Cabrera breached no duty that proximately caused the collision.

The text of Section 101.021(1) requires a plaintiff to show **both** that the property damage, personal injury, or death arose from motor-vehicle use **and** that the damage, injury, or death was proximately caused by the employee's negligence. *City of San Antonio v. Riojas*, 640 S.W.3d 534, 538 n.13 (Tex. 2022) (emphasis added). These are separate and independent requirements. *Id.* Satisfying the "arises

from" requirement does not excuse a plaintiff from demonstrating proximate cause. *Id.*

The components of proximate cause are cause-in-fact and foreseeability. *Western Invs. v. Urena*, 162 S.W.3d 547, 551 (Tex. 2005). The test for cause-in-fact, or "but-for" causation, is whether the negligent act or omission was a substantial factor in bringing about the injury and whether the injury would have occurred without the act or omission. *Del Lago Partners v. Smith*, 307 S.W.3d 762, 774 (Tex. 2010). A new and independent cause that intervenes between the defendant's breach of duty and the plaintiff's injury can disrupt the causal chain and relieve the defendant of liability. *Stanfield v. Neubaum*, 494 S.W.3d 90, 97 (Tex. 2016).

To prove foreseeability, a plaintiff must establish that a person of ordinary intelligence should have anticipated the danger created by the negligent act or omission. *Doe v. Boys Clubs*, 907 S.W.3d 472, 478 (Tex. 1995). But Texas law imposes no duty to foresee negligent or unlawful conduct on the part of another. *Gonzales v. Trinity Indus., Inc.*, 7 S.W.3d 303, 307 (Tex. App.—Houston [1st Dist.] 1999, pet. denied); *Lawson v. B Four Corp.*, 888 S.W.2d 31, 35 (Tex. App.—Houston [1st Dist.] 1994, writ denied); *Peek v. Oshman's Sporting Goods, Inc.*, 768 S.W.2d 841, 846 (Tex. App.—San Antonio 1989, writ denied) ("One is not bound to anticipate negligent or unlawful conduct on the part of another.").

**A. Houston's motion demonstrated that Cabrera breached no duty and Payne has no evidence otherwise.**

Payne pled that Officer Cabrera breached his duty in one or more of the following ways, which are contrasted against the unrefuted evidence developed in the case:

| Complaint at ¶85 ROA.46 | Unrefuted Evidence |
|---|---|
| failing to keep a proper lookout | Irwin conceded that there is not an indication that driver inattention caused the crash. ROA.1142 |
| failing to control speed in violation of Transportation Code § 545.351 | Darcy conceded that this section is inapplicable to Cabrera because Payne did not enter the intersection legally. ROA.1666 |
| failing to brake properly | Cabrera braked hard and turned the wheel to the left. ROA.1120.<br>Irwin and Darcy both conceded that Cabrera braked and swerved in response to Payne pulling out in front of him. ROA.1142, 1667. |
| failing to take evasive action to avoid hitting Plaintiff | Cabrera braked hard and turned the wheel to the left. ROA.1120.<br>Irwin and Darcy both conceded that Cabrera braked and swerved in response to Payne pulling out in front of him. ROA.1142:22-25, 1667:17-23. |
| failing to control his vehicle | Cabrera tried to minimize the harm to persons by aiming for the trunk of the Cadillac or at least the back seat where no persons appeared to be sitting. ROA.1120.<br>Irwin agreed that the steering input looked like Cabrera realized when he was not going to avoid the collision he tried to go behind the Cadillac. ROA.1143:15-25, 1143:1-2 |
| driving recklessly in violation of Transportation Code § 545.401 | Cabrera believed he was operating his vehicle in a manner that was reasonable and prudent. ROA.1119. He was obeying traffic signals and came to a complete stop at several red lights. ROA.1119. He maintained visibility on the street and the road ahead of him. ROA.1119-20. He was not accelerating aggressively. ROA.1137-38, 1672-73. But he reached a peak speed of 70 mph for a few seconds. |

| Complaint at ¶85 ROA.46 | Unrefuted Evidence |
|---|---|
| | ROA.1134:6-11.<br>Cabrera testified he was not reckless. ROA.1283:2-23.<br>Duplechain testified that based on the totality of the circumstances, Officer Cabrera was not reckless. ROA.1231. |
| failing to use the degree of care as a person of ordinary reasonable prudence would have | Cabrera testified he was operating his vehicle in a manner he believed to be reasonable and prudent. ROA.1119-20. |

The evidence establishes that Officer Cabrera breached no such duties. The mere fact that a collision occurred is not evidence of Officer Cabrera's negligence. *City of Austin v. Powell*, 704 S.W.3d 437, 459 (Tex. 2024) ("[N]egligence is never presumed, and [ ] the mere happening of an accident is no evidence at all of negligence.") (alterations in original); *Smith v. Cent. Freight Lines, Inc.*, 774 S.W.2d 411, 412 (Tex. App.—Houston [14th Dist.] 1989, writ denied).

Payne adduced no evidence to the contrary. Indeed, as Officer Cabrera had no duty to predict Payne's illegal left turn, Officer Cabrera breached no duty. The only proximate cause is Charles Payne's illegal left turn.

## B.    Houston's motion established that Charles Payne's conduct was the only proximate cause of the collision.

As Houston described in its motion, ROA.1099-1100, Houston's motion demonstrated that the unrefuted evidence establishes that Charles Payne caused this collision:

- Charles Payne was operating a motor vehicle under the influence of marijuana which can impair judgment and ability to safely operate a motor vehicle; ROA.1122, 1647-48,

- Charles Payne's blood sugar was high, which can mimic drunk driving; ROA.1122, 1650:3-18

- As the party making a left turn, the Transportation Code required Charles Payne to yield the right-of-way to a vehicle that is approaching from the opposite direction and that is in such proximity as to be an immediate hazard, but he did not do so;  ROA.1644-45; Tex. Transp. Code § 545.132

- Charles Payne entered the intersection illegally; ROA.1666:7-15

- Charles Payne did not come to a complete stop before beginning his turn; ROA.1129:21-24

- Had Charles Payne stopped for just two seconds before beginning his turn, the accident would not have occurred. ROA.1131:4-8

The reason Charles Payne made this illegal turn is because shortly before or at the time of the collision, Charles Payne was having a heart attack. ROA.1122. In addition, his blood glucose was extremely elevated, which, have almost certainly affected his vision, could have affected his judgment, and separately or combined with the fact that he was under the influence of marijuana made him impaired enough to turn left without looking or yielding to oncoming traffic.

ROA.1122. He made a left turn immediately in front of Officer Cabrera without stopping and in fact, barely even slowing down. ROA.1129-1131.

Though Payne takes issue with Officer Cabrera's speed, Officer Cabrera's speed alone has no causal nexus to this accident. Payne's accident reconstructionist cannot say to a reasonable degree of certainty that the accident would still have occurred if Officer Cabrera remained at 70 mph but stayed in the left lane. ROA.1146-47.

Officer Cabrera could not have reasonably predicted that Charles Payne would fail to yield the right of way and make an illegal left turn in front of him. *See Jarrett v. Shook*, No. 03-12-00038-CV, 2012 WL 4466473, at *3 (Tex. App.— Austin Sept. 27, 2012, no pet.) ("[I]n order for Vaughan to be charged with the duty of taking the evasive actions Jarrett describes, and therefore to be negligent in failing to take them, he would have had to foresee that Jarrett would fail to yield the right of way and would make an illegal left turn in front of him. There was no evidence that Vaughan could have expected or anticipated that Jarrett would turn in front of him. Nor was there evidence that Vaughan should have foreseen or predicted that Jarrett would fail to yield the right of way. *See Salinas v. Briggs Ranches*, 350 S.W.3d 218, 227 (Tex. App.—San Antonio 2011, no pet.) (no duty imposed when conduct causing accident was not foreseeable); *Foster v. Denton Indep. Sch. Dist.*, 73 S.W.3d 454, 465 (Tex. App.—Fort Worth 2002, no pet.) (test for foreseeability

is what one should, under the circumstances, reasonably anticipate as consequence of his or her conduct).

The Texas Supreme Court recently held as much based on squarely analogous facts. *Werner Enterprises, Inc. v. Blake*, 719 S.W.3d 525 (Tex. 2025). In *Werner*, the driver of a pickup truck traveling too fast on an icy, divided interstate highway suddenly lost control, hurtled across a 42-foot-wide median, and collided with the defendant's 18-wheeler before the defendant had time to react. *Id.* at 528-29. The plaintiffs proved at trial that, if not for the 18-wheeler's speed, which was below the speed limit but still unsafe for the icy conditions, the accident likely would not have occurred or the injuries would have been less severe. *Id* at 529. The Supreme Court held, however:

> The defendant's presence on the highway, combined with his speed, furnished the condition that made the injuries possible, but it did not proximately cause the injuries. Rather, the sole proximate cause of this accident and these injuries—the sole substantial factor to which the law permits assignment of liability—was the sudden, unexpected hurtling of the victims' vehicle into oncoming highway traffic, for which the defendants bore no responsibility.

*Id*.

The same is true here. *Even if* Cabrera had been traveling too fast for the conditions, and *even if* the accident would not have occurred had Cabrera been traveling more slowly, his presence on the Shepherd at the moment Charles Payne

had a heart attack and turned into oncoming traffic was a mere happenstance of place and time. Plaintiffs' purported expert conceded that there is no indication that Officer Cabrera was inattentive or that he failed to react to Charles Payne pulling out in front of him. ROA.1142:9-21. And, as noted above, Payne's accident reconstructionist cannot say to a reasonable degree of certainty that the accident would still have occurred if Officer Cabrera remained at 70 mph but stayed in the left lane. ROA.1146-67. The sole substantial factor to which Texas law permits assignment of liability is Payne's sudden and unexpected left turn into oncoming traffic. As Cabrera's conduct is not the proximate cause under the standard in *Werner*, the TTCA's motor vehicle waiver does not apply and this Court lacks subject-matter jurisdiction over Payne's TTCA claim.

### C. Payne failed to present evidence that would create a genuine issue of material fact to defeat summary judgment.

Payne presented no evidence to refute that Charles Payne caused this accident by making an illegal left turn into oncoming traffic while impaired by a heart attack, out-of-control blood glucose, and/or marijuana use. Rather, Payne tacitly conceded that Mr. Payne's medical condition contributed to cause the accident ROA.1815, 1819 ("Even if Mr. Payne's medical event contributed…").

Nevertheless, Payne argued that the evidence established breaches of duty for failing to control speed, driving recklessly, and failing to brake properly,

citing only Plaintiffs' Exhibit I, Irwin's report at page 7. ROA.1813. Significantly, this page of Irwin's report does not support Payne's arguments. Instead, it confirms:

- Officer Cabrera reacted to the crash by braking and steering;

- There is not a criticism here of the time it took him to perceive and respond to Mr. Payne's vehicle as it turned;

- Immediately before [Charles Payne] turned, Cabrera's vehicle was obstructed by the Chevrolet in the opposing turn lane; and

- Had Officer Cabrera remained in the left travel lane, he would not have struck the Cadillac.

ROA.2235.

But even if Payne had adduced evidence that Officer Cabrera breached one of these duties, Payne still failed adduce evidence that these breaches can be fairly said to be the proximate cause of the collision and Mr. Payne's death under Texas law. Payne's only attempt to distinguish *Werner Enterprises*, was to argue that "Cabrera was traveling at double the speed limit and looking down at his laptop." ROA.1819. Payne's arguments are untenable for several reasons.

First, Payne's arguments mischaracterize the record, including her own experts' opinions. Irwin opined that had Officer Cabrera remained in the left lane the accident would not have occurred—even if Officer Cabrera had continued traveling at 70mph. ROA.1819, 2235 ("Had Officer Cabrera remained in the left

travel lane, he would not have struck the Cadillac."), ROA.1146-47 ("Can you say to a reasonable degree of certainty that this accident would have occurred if Officer Cabrera remained at 70 miles per hour in the left lane?" "A. I wouldn't say that sitting here today.").  Hence, Payne presented no actual evidence that Cabrera's speed is "an independent, concurrent cause" as Payne argues.

Further, because Irwin conceded there was no driver inattention, Officer Cabrera's "looking down at his laptop" is immaterial to proximate causation. ROA.1819.  In fact, Irwin testified:

> Q. Earlier we talked about how you had a conversation with Mr. Dekle that Officer Cabrera had some sort of attention to the monitor in his police vehicle at some point prior to the crash, but he didn't know how long. Did any part of that conversation change your opinion that there is not an indication to inattention by either driver contributed to the crash?
>
> A. No, ma'am, it does not.

ROA.1142:14-21.

Second, Payne's arguments ignore that the *Werner Enterprises* plaintiffs proved at trial that, if not for the 18-wheeler's speed, which was below the speed limit but still unsafe for the icy conditions, the accident likely would not have occurred or the injuries would have been less severe.[3] 719 S.W.3d at 529.  In this

---

[3] Payne argued that Officer Cabrera's speed "magnified the risk and severity of impact." ROA.1815.  But Payne presented no evidence that a slower speed would have somehow minimized the severity of impact or Mr. Payne's injuries.  Nor could they; because the evidence established that he was already suffering a medical emergency—including a heart attack—Payne has

respect, *Werner Enterprises* is not meaningfully distinguishable.  Since this Court must make an *Erie* guess of what the Texas Supreme Court would do with the claim, the Court should follow *Werner* and hold that Charles Payne's conduct was the only ***proximate*** cause of the accident.

Finally, Payne argued that proximate cause is ordinarily an issue for the jury.  ROA.1815.  But like any issue that is "ordinarily" one for jury, if the evidence reflects no genuine issue of material fact, summary judgment is nevertheless appropriate.  Case law is replete with examples of summary judgment being entered on causation issues.  *See e.g.*, *Williams v. BP Expl. & Prod., Inc.*, 143 F.4th 593, 602 (5th Cir. 2025) ("[T]here is no genuine issue of material fact as to specific causation…"); *Strong v. Paradise*, No. 3:23-CV-2847-K, 2025 WL 3532150, at *7 (N.D. Tex. Nov. 18, 2025), report and recommendation adopted, No. 3:23-CV-2847-K, 2025 WL 3530955 (N.D. Tex. Dec. 9, 2025) ("The bus's placement merely created the conditions for Strong's injury."); *Patterson v. United States*, No. 3:23-CV-3-DPJ-ASH, 2025 WL 2552297, at *8 (S.D. Miss. Aug. 15, 2025), report and recommendation adopted, No. 3:23-CV-3-DPJ-ASH, 2025 WL 2550045 (S.D. Miss. Sept. 4, 2025) ("The cause of his injury is his own self harm.."); *Unimex Logistics, LLC v. Guerra*, No. 13-23-00348-CV, 2025 WL 1912194, at *6 (Tex. App.—Corpus

---

presented no evidence to suggest that if this collision had occurred at 30 mph, 20 or even 15 mph, Mr. Payne would not have died from his heart attack anyway.

Christi–Edinburg July 10, 2025, no pet.) ("Accordingly, we hold that the experts' testimony was conclusory and speculative, and such evidence does not raise a genuine issue of material fact on proximate cause."); *Town of Prosper v. Harper*, No. 05-24-01029-CV, 2025 WL 1909496, at *5–6 (Tex. App.—Dallas July 8, 2025, no pet.)("Because the officers' use and operation of their vehicles is too attenuated from Harper's injuries, Harper failed to raise a fact issue as to whether there was a causal nexus between the operation of the officers' vehicles and the injuries sustained.").

Payne failed to create a genuine issue of material fact to refute that Charles Payne was the only proximate cause for the accident. The trial court erred in denying Houston's motion for summary judgment. The Court should reverse and render judgment in Houston's favor dismissing Payne's claims with prejudice for lack of subject-matter jurisdiction.

## IV.   The trial court erred in denying summary judgment on Payne's TTCA claim because it is barred under the TTCA's election of remedies scheme.

As discussed in Section II.B., *supra*, the TTCA's election of remedies scheme confers immunity upon either a governmental unit or its employee upon the occurrence of certain events. Section 101.106(d) of the TTCA's election of remedies scheme states "a judgment against an employee of a governmental unit shall immediately and forever bar the party obtaining the judgment from any suit against

or recovery from the governmental unit." Tex. Civ. Prac. & Rem. Code §

101.106(d).

### A. Houston presented evidence that Charles Payne, Sr. took a judgment against Officer Cabrera, which conferred immunity upon Houston for Payne's derivative claims.

Here, Charles Payne's estate obtained a judgment against Officer

Cabrera. ROA.1393. Because the plaintiffs' claims are entirely derivative of Charles

Payne Sr.'s, *Russell v. Ingersoll-Rand Co.*, 841 S.W.2d 343, 345 (Tex. 1992)

("Wrongful death actions are also derivative of the decedent's rights."), Payne is

barred from taking a judgment or recovering against Houston. *See* Tex. Civ. Prac. &

Rem. Code § 101.106(d).

### B. Payne failed to present evidence or argument that would defeat summary judgment in Houston's favor on her TTCA claim.

Payne's only counter-argument reflects a straw-man fallacy: that her

*Monell* claims cannot be barred by the TTCA's election of remedies scheme.

ROA.1819. But Houston never argued that the TTCA election of remedies scheme

bars Payne's *Monell* claims. Rather, Houston limited its election of remedies

argument to her TTCA claim. Payne has no counter-argument to refute that because

the estate took a judgment against Officer Cabrera, section 101.106(d) of the TTCA

bars her TTCA claim against Houston. The Court should reverse and render

judgment in Houston's favor dismissing with prejudice Payne's TTCA claim for

want of jurisdiction.

## V.    The trial court erred in denying summary judgment on Payne's TTCA claim because the 9-1-1 exception preserves Houston's immunity.

The Texas Supreme Court has made clear that the statutory exceptions to the waiver are not affirmative defenses; they remain a plaintiff's burden to negate to demonstrate a waiver of the governmental unit's immunity. *Powell*, 704 S.W.3d at 457; *Rattray*, 662 S.W.2d at 866-67.  Payne did not meet her burden to negate the 9-1-1 exception.

### A.    Houston established that the 9-1-1 exception bars Payne's TTCA claim.

As discussed in section II.C.*, supra*, the 9-1-1 exception applies when the action of an employee "involves…responding to a 9-1-1 emergency call".  Tex. Civ. Prac. & Rem. Code § 101.062.  Ordinary meanings are attached to terms not given a statutory definition. See Tex. Gov't. Code Ann. § 311.011(a).  The word "involving" is an exceedingly broad term for a statute.  *United States v. Vickers*, 540 F.3d 356, 365 (5th Cir. 2008).  The plain meaning of the term "involving" means "related to or connected with." *Id.* at 365 (5th Cir. 2008); *see also Rivas v. State*, 787 S.W.2d 113, 115–16 (Tex. App.—Dallas 1990, no pet.) (recognizing "involve" has been defined as to relate closely). The use of the word "involves" in section 101.062 thus broadens application of the 9-1-1 exception beyond the immediate response to any particular call itself.  Tex. Civ. Prac. & Rem. Code § 101.062. Indeed, a comparison with the TTCA's emergency exception reveals the

Legislature's intent that the 9-1-1 exception have a broader application than the TTCA's emergency exception. *Compare* Tex. Civ. Prac. & Rem. Code § 101.062 ("***involves*** providing 9-1-1 service or ***responding*** to a 9-1-1 emergency call") *with* 101.055(2) ("***while responding*** to an emergency call or reacting to an emergency situation"). The difference in the language suggests that while the TTCA's emergency exception is temporally limited to the officer's response to an emergency call or reaction to an emergency situation, the 9-1-1 exception is not subject to the same temporal limitation; rather, so long as the action is somehow related to or connected with a response to a 9-1-1 call, the exception applies. *See Terry*, 712 S.W.3d at 102 (recognizing distinctions in language for 9-1-1 and emergency exceptions).

That test is easily met here. Houston's evidence established that Officer Cabrera was still responding to the priority-two call that originated from the 9-1-1 system. ROA.1120. And even if there were no pressure of an emergency response, Cabrera remained assigned to that call and was out of the call for service loop as a result. ROA.1120, 1222-23. But at the bare minimum, he was still completing activity that was related to or connected with his response to that call because he still needed to complete the offense report and charges. ROA.1120.

Nor did Cabrera violate any applicable law. ROA.1231:6-11. The Texas Legislature has expressly exempted law enforcement officers from speed

limits on routine patrol as well as emergency response. *See* Tex. Transp. Code §§ 545.365; 546.001. ROA.1244:6-13. Despite being assigned to the call, Officer Cabrera was a patrol officer on a patrol shift. ROA.1232-33, ROA.1234:17-22. He did not violate the law by exceeding the speed limit; the speed limit did not apply to him. ROA.1231:6-11; Tex. Transp. Code §§ 545.365; 546.001.

### B.    Payne failed to negate the 9-1-1 exception.

Payne's response presented no evidence to refute that Officer Cabrera was still assigned to the priority two call for service that originated from the 9-1-1 system.  Nor did Payne identify any applicable statute that Officer Cabrera violated. ROA.1813, 1820. Payne's only argument in response was that Officer Cabrera was no longer responding to an emergency. ROA.1820. But as discussed in section II.C, *supra*, the 9-1-1 exception does not require employees to be operating under emergency circumstances. *Denby*, 2022 WL 3588753, at *5.

Payne failed to meet her burden to negate the 9-1-1 exception. Houston retains its immunity for Plaintiffs' TTCA claim. The Court should reverse and render judgment dismissing Payne's TTCA claim with prejudice for want of jurisdiction.

## CONCLUSION

For the foregoing reasons, the Court should reverse and render judgment in Houston's favor dismissing Payne's TTCA claim with prejudice for lack of subject-matter jurisdiction.

<div style="margin-left: 40%;">

Respectfully submitted,
**ARTURO G. MICHEL**
**City Attorney**
**CHRISTY L. MARTIN**
**Chief Torts/Civil Rights**

</div>

Date:  January 20, 2026          By:   */s/ Christy L. Martin*
_____

<div style="margin-left: 40%;">

ATTORNEY IN CHARGE
SBN:  24041336
FBN:  754168
832.393.6438
christy.martin@houstontx.gov
CITY OF HOUSTON LEGAL DEPARTMENT
900 Bagby, 4th Floor
Houston, Texas 77002
832.393.6259 Facsimile

***Attorneys for Defendants,***
***City of Houston, Texas,***

</div>

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document has been forwarded electronically through the electronic filing manager on January 20, 2026, to the following counsel of record:

*/s/Christy L. Martin*
CHRISTY L. MARTIN

## CERTIFICATE OF COMPLIANCE

I certify that the foregoing was prepared in Microsoft Word 2016 MSO 64-bit in Times New Roman 14 point font; the word-count function shows that, excluding those sections exempted under FRAP 31(f), the brief contains 7,145 words.

*/s/Christy L. Martin*
CHRISTY L. MARTIN